Morning everyone. Morning, morning, morning. Before we begin with argument, Judge Bybee and I would just like to acknowledge Judge David Ebell from the Tenth Circuit. He's visiting with us and we're very appreciative of his willingness to come out and assist us. So with that I'm gonna call the cases just as they appear on the calendar. The first case was Adalco but that's been remanded already and our first case for argument is Vargas-Saavedra versus Lynch. Good morning. May it please the court. I'm Matt Adams with Northwest Immigrant Rights Project on behalf of Mr. Vargas. The board erred in rejecting Mr. Vargas' challenge as to the retroactive application of the agency's restrictive interpretation which was contrary to this court's prior holdings. Now both parties acknowledged that pursuant to the en banc decision in Garfias-Rodriguez that the test laid out in Montgomery Ward should be applied to determine whether it be excessive or unduly warranted to now apply the agency's new rule to Mr. Vargas. When Mr. Vargas applied for adjustment of status with the corresponding waivers in September of 2005, this court's holding in Perez Gonzalez made absolutely clear that he was eligible to seek adjustment of status. At the time that he filed, we had had our decision in Perez Gonzalez. The Supreme Court actually issued brand X for whatever value that might have been but we hadn't had any of the contrary decisions from the BIA. So we didn't have Torres, we didn't have our decision in Acosta, we didn't have Enrique Briones. Exactly. It really does fall sort of perfectly in that interim period where he had nothing to look at except for Perez. Exactly. He presents the strongest factors. The agency had not even announced in any of the parallel grounds of inadmissibility that they were not going to abide by this court's interpretation of the statute. The agency had not staked out a contrary interpretation of the statute. And that is why the straightforward application of the factors of Montgomery Ward weigh heavily in favor of finding that he should remain eligible for the application that he was seeking, lawful permanent residence. Mr. Adam, is this is this case even stronger than Carrillo de Palacios? Certainly it is. In Carrillo de Palacios, the petitioner had filed after this, after the agency's contrary decision in both, contrary decisions in both Madero-Torres-Garcia and Briones. And in in this case there was no indication from the agency when he applied. In fact, it's stronger than the petitioner's case in Acosta-Olivarria. And I think that Acosta-Olivarria, which which came out after we completed our briefing in this case, but we submitted a 28-J letter, demonstrated that an individual like Mr. Vargas, who had submitted their adjustment application after this court had issued its authoritative and binding interpretation, was entitled to rely on that. Now, at least in Acosta-Olivarria, the government could protest and point at Madero-Torres-Garcia and say, well, there was some indication on this parallel ground of inadmissibility under the same subsection that the agency was going to stake out a different position. But here there's no such argument. Can I ask about, are you, the retroactivity cases under 212 with the little subsection 2i versus the little subsection 1i, that is, whether the removal problem before was where they had been removed before or whether, what was the other one? Unlawful presence more than a year. Is there any reason to distinguish between those two, I mean, from a legislative history point of view, is there any reason to distinguish between them for a retroactivity purpose? No, they were introduced together both in September of, September 30th of 1996, introducing a new scheme whereby persons were now going to be required to leave the country and instead of seeking adjustment of status and also introducing penalties for those. Right, I understand that, and they weren't acted together, I understand that, but was there any legislative history, which I haven't individually tried to look up, that would distinguish those two for retroactivity purposes that Congress might have had in mind? Absolutely none that I'm aware of, and we did extensive research as far as, and of course we can step back and look at, there's a general presumption, a prospectivity for legislative enactments, and Congress didn't specify anything as far as a retroactive application of either of these grounds of inadmissibility, and there was no other discussion that would illuminate this or in any way demonstrate that they should be treated separately. Is there any tension between our decision in Carillo and our decision in Acosta, Olivaria? I don't think there's tension, I think there's a couple of different points at issue, and as this court made clear in Garfias-Rodriguez, given that they're applying the Montgomery Ward scheme, the administrative agency changing the rules, that there's not a uniform rule that's applied with respect to determining whether a new rule is going to be applied retroactively. If we have to go, case by case, does it make any difference in your case that in Acosta, Olivaria, that there was some evidence that the petitioner there had said, I decided to forego going back to, I think it was Mexico, instead of making the filing fee. You've allegedly paid the filing fee. Is there any evidence that your client paid the filing fee but would have gone back to Mexico? No, we don't have any statement that he was, at that point, intending to return to Mexico, but I would argue that our client's case is even stronger than that of Acosta, Olivaria, for a couple of different reasons. One, as I already noted, the board had issued its decision in Torres-Garcia when the petitioners in Acosta, Olivaria had filed. And two, the petitioners in Acosta, Olivaria filed their applications when they were already in removal proceedings. That is to say, they had already been apprehended and had nothing to lose but to seek this remedy, whereas the petitioner here, Mr. Vargas, affirmatively went forward and submitted applications to USCIS in September of 2005. And indeed, it wasn't until the next year, a year later, after the agency then staked out a different position, that his application was denied. In addition, the record here demonstrates not only the $1,000 penalty fee but over $600 in other filing fees that he submitted all on September 13th of 2005. Let's go back to these two cases, and this is a question more for the, I mean, the two cases that might suggest non-retroactivity. Garfias, there the reliance was before the Ninth Circuit case at all, wasn't it? That's correct. And in Palacios, the alleged reliance was after the BIA had disapproved. So that neither of those, I mean, whatever the dicta in them might be, neither of them could be considered holdings of somebody trying to rely on a pre-existing Ninth Circuit case that had not yet been disapproved by the BIA. That is absolutely correct. And the only caveat I would put on Carrillo-Palacios is that person does not present as strong of a case, but there are individuals who filed even after Torres-Garcia who are going to be able, in their individual cases, demonstrate, for example, that they relied on the district court's injunction because they were a class member at that time, like Mr. Vargas was of Durán- González. And you're going to have other people who are going to be able to have excessive hardship that's going to come on much stronger than even individuals generally present on being deported. And so they're going to have arguments that their cases, when individually weighed, should be distinguished from Carrillo-Palacios. But Mr. Vargas doesn't need to worry about that because he presents much stronger factors. There was simply no indication from the agency that they were not going to abide by this court's holding. And in at least one contrary circuit case, casting criticism on that approach. That is true, but circuit conflict or inter-circuit conflict does nothing to undermine the precedential value of a decision. All the time we advise our clients based on the law, and the fact that another circuit has issued an alternative or a contrary interpretation does not undermine the binding nature of this court's precedent. Is there any way that this case could be sort of that would allow him to benefit from Duran-González? Duran-González, while he was originally a class member, Duran-González, in the settlement agreement, narrowed the class so that it did not include individuals who are already before the Immigration Court or were already before the Court of Appeals because the parties agreed that in that forum the individuals would have an apply to Montgomery Ward factors. So once removal proceedings had been initiated against the person that fell within potential class member, they're they're out. They're out no matter what. And that's correct because they now have the opportunity before this court or before the Immigration Court to assert that under Montgomery Ward. So those who are those who are class members of Duran-González and get the benefit of Duran-González, they their applications will be adjudicated. That is correct. And you don't guarantee that they'll be granted. They'll just be adjudicated. That's absolutely correct. Well maybe not. I mean isn't that discretionary relief? Yes. Maybe they may not get released. They may get released. They'll have an audience anyhow. That's how I understood Mr. Judge Pius to explain it. Yes, they'll have the opportunity to apply pursuant to the law that was in effect at their time. So for example, Mr. Vargas seeks to have that same opportunity. This doesn't mean he's entitled to lawful permanent residence. The government is still going to have to decide whether he merits that as as a matter of discretion. And they'll be able to determine whether he'll be granted the waiver for having unlawfully reentered. The government will will weigh that as a negative equity. But then at least he'll have the opportunity to demonstrate that he's been living here for 16 years without any criminal incidents. He's been working for the same employer for 16 years. He has a U.S. citizen wife, family, all those equities he'll be able to present. But you're absolutely right. He's not entitled to lawful permanent residence. We simply assert he's entitled to have his opportunity to seek lawful permanent residence pursuant to the laws that were in effect at the time he submitted his application. It strikes me as a little odd to say that somebody who is a member of the class and Mr. Vargas Mr. Vargas would have been a member of the class but for the removal proceedings that it's that he could get an audience under the class under the definition. But it's a possibility he may not with us. It strikes me as somewhat odd. Well I think that the way as a way of resolving all these these issues. I think that there's two points. I was class counsel on that so I can talk a little bit more to that. Is that under the jurisdiction stripping provisions of 1252 B9 there was concern that the district court wouldn't have authority to determine cases that were already in removal proceedings. And I believe that this court's subsequent decision in Correo Ruiz has helped to alleviate any concerns that there might be where they've set precedent that if there are still issues that the record is that require development of the record that the court has the authority to remand the case back to the administrative agency for further development of the record. Mr. Vargas however is in a much stronger position. The record is very clear not only that he applied within the appropriate time frame that most strongly presents his case but it demonstrates the legal expenses that he's incurred. Not completely. I mean I agree I don't think there's a need to remand if we were to grant relief at all but but the extent of his attorney's fees hasn't really been fleshed out. That we do have some costs in any event. That is absolutely correct and I think this court's decision in Costa Olivaria made clear that the legal expenses incurred in paying simply the thousand dollar filing fee in order to qualify under 245 I are sufficient for establishing reliance under Montgomery Ward. Would you like to save some time for rebuttal? Thank you. I appreciate it. Good morning your honors. May it please the court, Raya Jarawan on behalf of the respondent the Attorney General. In this court's 2012 decision Garfias Rodriguez v. Holder, the en banc panel joined several other courts of appeals to determine that deference is due to the board's decision in matter of brioness. The Garfias court also laid out the Montgomery Ward test which respondent agrees applies in this case. In applying the Montgomery Ward test to Mr. Vargas Cevedo's case, the factors do weigh in the government's favor and thus the board properly affirmed the immigration judge's denial of Mr. Vargas Cevedo's adjustment application based on his inadmissibility. Counsel I want to stop you there. I'm very anxious to hear the rest of your argument on the merits. I actually have a procedural question. So our clerk's office bundled this case with a case called Aldaco and the government pulled Aldaco apparently in an exercise of discretion. So what is the status of this case with respect to the government's exercise of that same discretion? We have discussed with Mr. Adams the issue of prosecutorial discretion. That issue was resolved and therefore we proceeded today. DHS has decided to proceed? Well DHS presented DHS presented the issue of prosecutorial discretion and after discussions with Mr. Adams we decided to proceed. We both decided to proceed. So there's nothing there's nothing pending? There's nothing pending in regards to prosecutorial discretion. But you could have in this this case could have been resolved by just sending it back to the board and with the understanding with the directions that his application would be adjudicated. That's correct. The board this court has applied the Montgomery Ward test in the first instance and I believe Garfias at 514 discusses that retroactivity is not an issue that must be exhausted. It's not required except to allow the agency to correct its own error. So yes in essence the board could address this in the first instance. Well no I could just address it could just address the adjustment application. Well the IJ could. Well the both the IJ and the board did address the adjustment applications in this case. On the merits? Well they addressed the not using the Montgomery Ward test. Correct. That's correct. So so the board could address and apply the Montgomery Ward test. Are there a lot of I mean just just give me an estimate are there a lot of of aliens that are in the pipeline that would that are raising this kind of issue because this issue will soon disappear given that you know we're not gonna have a retroactive problem after a while because we'll have the new law. I mean how many how important is the precedent in this case in the Ninth Circuit? I don't know how many are in the pipeline. I don't know how many are presenting an argument that they are relying on Perez Gonzalez. Obviously Mr. Vargas-Cevedo does fall within. It's only about an 18 month window or something. That's correct. So I'm just curious I mean is it like a handful or is it like thousands? Your honor I wish I could answer that question. There was a class action must have been a sufficient number to maintain a class. There was sufficient number to maintain the class action yes and and as Mr. Adams explained there is Mr. Vargas-Cevedo is not part of that class. Right. But so there may be more that is true there may be more and Mr. Vargas-Cevedo does have this favorable window of time and in in discussing the cases post-Garfias that your honors discussed a few minutes ago I would point out that there are differences between this case and those cases. I think this boils down to a comparison of the reliance interests in this case. In the reliance on Perez Gonzalez that was the sole reliance interest given and Garfias talks about these reliance interests. Now that sole reliance interest on one case was not sufficient and the court decided to apply the retroactivity of Torres Garcia to Carrillo de Palacios. Now this case is also similar and different from Mr. Vargas-Cevedo but it is similar in the sense that Mr. Vargas-Cevedo is also only relying on Perez Gonzalez. Right but in in in Carrillo that case was he filed after Torres had rejected Perez so that's what I've already been put on notice that the board at least rejected it and he and if he was you know president enough to go and are smart enough to go and look at Brand X he could have put those two things together and figured out where we were going. Correct. Mr. Vargas could not do that. Well Mr. Vargas-Cevedo might have the benefit of Brand X but he's got no idea what the board's gonna do and all he's got is a judicial decision from this court. The difference between Carrillo de Palacios and Vargas-Cevedo is that specific timing issue that Carrillo filed right after Torres. Seems pretty significant doesn't it? It is significant. That is the only law in existence at the time that he pays his filing fee is running in his favor. It would have been a fool not to have filed. Your Honor I the government submits that the test is a reasonable reliance and Brand X did come out about three months prior to Mr. Vargas-Cevedo filing his adjustment application and the Perez dissent was also very strenuous that not only are there other cases and other circuits that disagree with Perez but Perez itself said that there would be more there would be a need for more agency elaboration on this issue and that's why Perez was was ruling because of this ambiguity. Garfias also explained that this ambiguity existed. It was very clear that there was tension between the adjustment provisions and the inadmissibility provisions at that time. Why doesn't our decision in Acosta-Olivaria govern this? So the difference between this case in Acosta-Olivaria is essentially the fact that the reliance interests in Acosta- Olivaria were that filing fee as well as the voluntary departure. And the opinion. Well they were and he relied on Acosta that's correct the 2006 Acosta case. Which was a significant point for the panel. Correct but Acosta did come after a matter of Torres-Garcia. Now the. It was clearly in the window. I'm sorry. It was clearly within the window. The Acosta-Olivaria application was within the window between Acosta. But it makes Acosta-Olivaria a much weaker case for reliance than this case. But the difference is your honor is that this giving up a voluntary departure foregoing that reliance interest is something that's not available in Vargas-Cevedo's case. And why is that? It's unclear if Mr. Vargas-Cevedo requested voluntary departure or not. But the issue in Acosta-Olivaria was that he requested voluntary. Well he he had voluntary departure and he gave it up to pursue his adjustment application. I think the difference between this case and the other cases. I don't recall. Are you sure about that? Voluntary gave up voluntary departure? I believe that his argument was. I thought it was that he didn't. He didn't leave the country. That was. I think that was the argument. I don't think that he actually applied for anything or had had the right to do anything. He presented as a reliance interest the voluntary departure. That he. You're using that loosely. That is he could have. He could have left rather than apply. He could have taken the voluntary departure that was granted for 10 years and then reapplied for consent to. For consent to reapply for admission. I guess I haven't. I guess I didn't read it that I don't recall that there had actually been a grant of voluntary departure that he gave up. I believe if I could turn to the correct page. I just thought it was that he opted not to go back. And instead apply for. Short of. But I may be wrong. Well in any event we've got another. We've got another reliance. We got the reliance of fees. Payment of fees. And whether you think that's a good reliant or not doesn't much matter because the Ninth Circuit in Garfias and in Acosta Oliveira have have said that that's a sufficient reliance. And so what difference does it make? Well everyone has to pay that thousand dollar penalty fee if they are applying. More than that. He paid that plus plus another. That's correct. So we've got we've got under Ninth Circuit controlling law we've got two cases saying that's sufficient reliance that solves that issue. Well Garfias rejected the filing fee by itself as sufficient reliance. However in that case Garfias filed prior to in 2002 prior to these cases arising. But the reliance issue is I mean that's a separate issue. But those cases say that paying the fee is a meets that the fourth prong of the reliance test. But the government contends that the paying of the fee alone is insufficient as Are you going to give him his money back? The fee is non-refundable as far as I understand your honors. But turning to Acosta Oliveira. It might have strengthened the government's case if they dedicated their willingness to give him back his money. Your honor I can't speak to that. But the pin site that I was finding in Acosta Oliveira it's under the discussion of the second and third factors. In which it states second Acosta Oliveira gave up the opportunity to voluntary depart the United States and started 10-year clock after which he could have sought admission. Had he voluntarily departed instead of saying and filing his application. But had the IJ actually granted voluntary departure? I think this is just a theoretical possibility. He had options at this point and he chose one you had to choose one path or the other. The issue is these are the reliance interests that are presented and he did have to choose one path or the other. Now the reliance interest here that the point that the government is making is that what are the sufficient reliance interest to preclude retroactivity. In this case Mr. Vargas-Seveda there are not sufficient reliance interest. In the other cases that this court has decided there was a reliance interest in the filing fee and that case plus something else. In Acosta Oliveira it was plus the voluntary departure. In Correa Ruiz... But if he hadn't actually if he hadn't actually been granted voluntary departure then the possibility of voluntary departure was simply a legal possibility. It was simply a permissible route and I don't I don't see why that would be different from this case. It would be a permissible route. He could seek voluntary departure to avoid the 10-year bar instead of staying here and filing the thousand dollars. But he thought with Perez on the books that he had a very good shot at it. And the point of Garfias is what is your reasonable reliance? What are you relying on that is reasonable as a counsel? What was government is arguing is even if it's reasonable to rely on Perez there the case law following Garfias indicates that there's an additional reliance interest that is necessary in order to preclude retroactivity. And that's the factual distinction between this case and the other cases. In Correa Ruiz... Why this limb? Well your honor sometimes these cases are close I agree with that and and sometimes the arguments are nuanced and the factual distinctions are nuanced. However that that's how the chips fall in this case. A little bit more important than that. And Correa Ruiz does make the point that there are these extra attorneys fees which are not present here are not in the record here and that's the reason that case was remanded. So in essence yes there there are differences in these cases there are factual differences. I just want to confirm again there's there's sort of a decision from our from our court on this case. There isn't any other alternative way of getting Mr. Vargas back before the IEJ for ruling on his application for adjustment of status. Your honor the yeah if he was a class member then he would have matter of which he's not. There's no way you could settle this. Your honor that short of that prosecutorial discretion issue which Mr. Adams and I discussed and short of your honors remanding for intervening case law for example I don't I don't see those are those are the options at play. Just turning back to the second and third factors the the court did reference Brand X which which the respondent has already argued was provided some writing on the wall for 10th Circuit the 5th Circuit and the 1st Circuit all disagreed with Perez after the issuance of Perez. So again it goes back to what was the reasonable reliance that this Mr. Vargas Avedra had on one case that was contrary. Do you have any cases that say it is unreasonable to rely on a direct precedent within your own circuit because there are contrary opinions in other circuits? I don't your Montgomery Ward test to this case. As I stated before he is in a favorable period of time in this case is unique because he applied between Perez and Torres Garcia which we don't necessarily have exactly that circumstance in the other cases that this court has decided. Well we do we have it we have it back to back in the Acosta delivery area. Except that the Acosta did have a different reliance. That's not that we weren't talking about reliance now and we've already I think decided that that the issue of reliance meaning attorneys fees and costs is a decided 9th Circuit precedent. And Acosta delivery area did the one difference is he did file I believe twice as the petitioner explained. In fact we've got another 9th Circuit case it's not published but it's Garcia Lara B. Lynch and then you've got the recent 10th Circuit which is over at 9th Circuit. So you got you got to you've got at least at least that. Yes I do I do remember reading the unpublished decision that's correct your honor. Your honors if there are no further questions I do rest on the arguments contained in the petitioner has a few minutes for a rebuttal. Thank you. First I would say that contrary to the government's position case law does not support this novel theory that they needed to show filing fee plus something else. And in fact if you look at the most recent decision in Correo Ruiz they rejected the alternative form of reliance. So the petitioner asserted two forms of expenses and he was focused on the attorney's fees because his filing fees were paid before the case law. And the second was that he had not voluntarily departed and pursued consular processing but instead had gone forward with his application. And this court found we do not think that qualifies as a legitimate reliance interest. So they rejected that other interest and in fact this court questioned that as well in Garfield Rodriguez. So all they relied on was the filing fee and that's true in Acosta-Olivaria. When you looked at the discussion of where the reliance where the petitioner demonstrated reliance it then focused solely on the timing of the application and the filing fee. And as I noted previously Mr. Acosta-Olivaria was in removal proceedings when he submitted his application. So it wasn't as if he was choosing whether to leave. It's a theoretical discussion of whether he could seek and perhaps be granted the voluntary departure from the judge instead of pursuing his application for adjustment of status. As this court has noted it's already determined in the unpublished decision Garcia-Lara that another individual again falling within this window whereas the individual applied after this court's authoritative holding and before the agency's contrary interpretation should be entitled to have their application adjudicated pursuant to the laws that was standard before. And the other point I would make is just with respect to Nunez-Reyes as the example we provided where there were eight other circuits that had opined in a contrary manner. That is to say there was a split with eight other circuits and with the agency. And yet ten years later when this court reversed its own prior interpretation it found it would be manifestly unfair to retroactively apply this rule to people who had relied on its law. There's simply no basis to make decisions from another circuit or a dissenting opinion, as both of those were evident in Nunez-Reyes, that individuals can't rely on the authority of this court. And again this court made that clear in Garcias-Rodriguez and said this decision in Acosta was authoritative and binding in this circuit until and if the agency issued a contrary interpretation. And that was the case when Mr. Vargas submitted his application. And we think that a clear cut application of factors demonstrate that pursuant to Acosta-Olivaria, pursuant to the language in Garcias-Rodriguez, that he is entitled to move forward on his application. That doesn't mean he's entitled to lawful permanent residence, but he's at least entitled to have his application adjudicated pursuant to the rules that were in play when he submitted his application and received his one shot to remain here with his family. Thank you. Thank you very much. Vargas of Adras submitted at this time.
judges: Ebel, Paez, Bybee